ROBERT MACHINSKI
1224 BRACEBRIDGE COURT
CAMPBELL, CA 95008
machinski@macht3.com
408.679.4240 (mobile)
PRO SE, PLAINTIFF

FILED
OCT 25 2024
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
SAN JOSE OFFICE

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

C 24 07452 VKD

ROBERT MACHINSKI,

    Plaintiff,

vs.

ALLY BANK;
MARIAH DOE; AND
TIM DOE,

    Defendants.

Civil Case No.:

**COMPLAINT FOR VIOLATIONS OF EFTA AND REGULATION CC; INJUNCTIVE RELIEF; DECLATORY RELIEF AND DAMAGES**

**DEMAND FOR JURY TRIAL**

1

Plaintiff Robert Machinski ("Plaintiff" or "Machinski"), individually brings the following allegations, based upon information and belief, against Defendants Ally Bank, Mariah Doe, and Tim Doe ("Defendant", "Defendants" or "Ally Bank"):

## INTRODUCTION

1. Defendant Ally Bank follows an illegal, negligent, arbitrary, and capricious pattern of indefinitely restricting access to accounts of customers, including Plaintiff, when said accounts are allegedly suspected of fraudulent activity. Defendants were grossly negligent in conducting a good-faith investigation, and intentionally misled Plaintiff. In many other instances, consumers have reported on social media platforms that their accounts were locked for over 90 days during Ally Bank's alleged fraud investigations.

2. Not only has Ally Bank violated their own written policies for availability of deposited funds, but they are in direct violation of the Expedited Availability of Funds Act (EAFA) and the Check 21 Act, collectively now known as 12 CFR Part 229 or simply "Regulation CC".

3. Defendants Ally Bank, Mariah Doe (Ally Fraud Department Lead) and Tim Doe (Ally Fraud Department) initially "locked up" Plaintiff's accounts based on suspicious activity on Plaintiff Machinski's checking and debit card accounts. Without warning, nor any written or oral communication from their fraud department, Ally Bank locked Plaintiff Machinski's accounts and denied him any access to his funds. To be clear, Machinski was unable to access any funds from his accounts for living expenses. Machinski was only made aware of this investigation and "lock-out" after a third-party merchant declined a purchase on Machinski's debit card.

4. Since October 10, 2024, and with one exception, Machinski has been unable to access his financial accounts or funds at Ally Bank.

5. Machinski brings this case against Ally Bank for unlawful restriction of account access and denying access to funds from his Ally Bank accounts in violation of the EFTA, and unlawful delay of deposit funds availability in violation of Regulation CC.

## JURISDICTION AND VENUE

6. This honorable Court has subject matter jurisdiction over Plaintiff's claims under 15 USC § 1693 (EFTA), 28 U.S.C. § 1331 (Federal Question), and 12 CFR Part 229 (EFAA/Check-21 or Regulation CC).

7. Supplemental jurisdiction exists for state law claims pursuant to 28 U.S.C. § 1367 (pendent or ancillary jurisdiction).

8. Jurisdiction over Plaintiff's claim(s) for declaratory relief is conferred by 28 U.S.C. § 2201 and 2202 (Declaratory Judgment Act).

9. Commencement and Assignment of Action: Under N.D. Cal. Local Rules 3-2(c) and (e), and pursuant to 28 U.S.C. § 1391(b)(2), assignment to the San Jose Division is proper because a substantial part of the events giving rise to the claims asserted occurred in Santa Clara County, and the parties herein are located in and do business in, Santa Clara County.

10. Diversity pursuant to 28 U.S.C. § 1332: Plaintiff Machinski resides in, and is domiciled, in California. Defendant is a corporation with headquarters located in Utah. *See* Davis, 557 F.3d at 1028.

11. The amount at stake in this action is over $75,000. *See* Naffe v. Frey, 789 F.3d 1030, 1039 (9th Cir. 2015).

12. In order… *"to invoke a federal court's subject matter jurisdiction, a plaintiff needs to provide only a 'short and plain statement of the grounds for the court's jurisdiction,"* as required by Rule 8(a)(1), and *"must allege facts, not mere legal conclusions, in compliance with the pleading standards."* Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). The court will

accept all well-pleaded allegations in the complaint as true and construe those allegations in a light most favorable to Plaintiff.

## PARTIES

### Plaintiff

13. Plaintiff Robert Machinski is a natural person and citizen of the United States residing (domicile) in the City of Campbell, County of Santa Clara, California.

14. Plaintiff Machinski is a *pro se* Plaintiff with no legal education and is not an attorney. Courts have consistently recognized that "*pro se* pleadings are liberally construed, particularly where constitutional right claims are involved." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). Courts commonly construe *pro se* pleadings liberally, and indeed, the Supreme Court has instructed lower courts to do so. *See Hughes v. Rowe*, 449 U.S. 519, 520 (1972) (pro se prisoner pleading held to "less stringent standards than formal pleadings drafted by lawyers"); *see also Christensen v. C.I.R.*, 786 F.2d 1382, 1384-85 (9th Cir. 1986); *Bretz v. Kelman*, 773 F.2d 1026, 1027 (9th Cir. 1985)(en banc).

### Defendants

15. On information and belief, Defendant Ally Bank is a direct banking subsidiary of Ally Financial Inc. Ally Bank is a Utah corporation registered with the California Secretary of State as a foreign corporation qualified to conduct business in the State of California.

16. Defendant Ally Bank is formed under the laws of the United States and was, at all times, relevant to this Complaint, a financial institution as defined by the EFTA, 15 U.S.C § 1693(a) and Regulation CC.

17. Plaintiff is informed and believes, and thereon allege, that Defendants Mariah Doe and Tim Doe are employees of Ally Bank assigned to the fraud department. Mariah Doe is Tim Doe's direct supervisor and the fraud team lead. Defendants Mariah Doe and Tim Doe

refused to provide their last names to Plaintiff and therefore assigned a fictitious last name of "Doe" for purposes of this initial Complaint. Plaintiff will amend the Compliant to allege the true names and capacities of such fictitious defendants once ascertained in discovery.

18. Plaintiff is informed and believes, and thereon alleges, that, at all relevant times herein mentioned, the Defendants, and each of them, are responsible in some manner for the occurrences herein alleged, and that each of the Defendants conspired with, aided, abetted, induced, authorized, ratified, contributed to, and/or cooperated with each of the remaining Defendants in committing the acts herein alleged. Accordingly, each of the Defendants is vicariously, jointly, and severally liable for the acts of the remaining Defendants.

19. Defendant Ally Bank maintains a registered office and a business and mailing address at 200 West Civic Center Drive, Sandy, Utah, 84070.

20. Ally Bank offers consumers a range of financial and credit products, including retail banking services, investing products, personal loans, auto loans, and home mortgages.

21. Ally Bank is exclusively an online banking institution with no physical branches. Ally customers can access their cash through Allpoint® ATMs located in California.

22. In May 2009, GMAC Bank rebranded as Ally Bank to distance the bank from its parent company, GMAC LLC, which was struggling with billions of dollars in losses. The rebranding was intended to attract new customers, improve the bank's image, and drive deposit growth.

**STATEMENT OF FACTS**

23. On or around May 15, 2018, Machinski opened a personal checking account with Ally Bank. Ally Bank issued a debit card (i.e., MasterCard) linking his checking account.

24. Machinski was entitled to consumer protections because, at all relevant times, he held title to his Ally Bank accounts as a natural person, because his accounts were used

primarily for personal, family, and household purposes of supporting himself and his family, and not for any commercial or business purposes.

25. Notwithstanding this complaint, Machinski never had any incidents of fraud, nor suspected fraud, with Ally Bank since opening his account over six years ago. Banking has been routine until this action/matter before this honorable Court.

26. On or about October 1, 2024, Machinski electronically deposited two separate and distinct checks with Ally Bank.

27. The first check was in the amount of $12,681.28 and issued as an "OFFICIAL CHECK" from Santander Bank, N.A. This check constituted proceeds from an estate settlement and mailed directly to Machinski from the Probate Attorney on that matter. That attorney letter and image of the check were made available to Ally Bank.

28. The second check was a personal check from an individual in the amount of $3,000 drawn from Chase Bank, N.A. That check was payment for personal items and was not the first time Machinski made a deposit from the issuers of this check. Machinski had previous and successful deposits into his Ally account from the issuers of this Chase bank account.

29. Within two or three business days of Deposit on October 1, 2024, both deposited checks appeared to have cleared within the Ally checking account. Funds were available and business was as usual. For over a week, Machinski had access to these funds without incidence.

30. Then out of nowhere on October 10, 2024, while attempting to make a purchase with Machinski's Ally Bank debit card, Plaintiff was notified that a third-party merchant declined the transaction. The merchant could not provide any reason for the decline.

31. On the same day, October 10, 2024, Machinski attempted to log on to his Ally checking account to inquire about the declined transaction but was denied access. The online

note stated that the account was "locked" because of too many login attempts with instructions to contact Ally Bank. Machinski contacted Ally Bank and subsequently routed to the fraud department. The first Ally Bank fraud agent (name unknown) advised Machinski that his account is locked because of suspicion of fraud. The agent also informed Machinski that his account was now under investigation with the fraud investigation team and that it will remain locked until the investigation is complete. Ally Bank provide no reason or detail on the cause of this investigation. Machinski inquired further what kind of fraud, what transaction(s) triggered the investigation, and who exactly they suspected of fraud, and probed to find any other additional detail. However, the agent declined to answer stating Ally bank policy prohibited further disclosure. Machinski asked the agent for a timeline to complete the investigation, but was notified there was none.

32.  Over the next two weeks, Machinski would call the Ally fraud department every few days inquiring about the status of the investigation and when he could have access to his account and access to his funds. In fact, Machinski demanded access to his funds each time. Each of the agents denied Machinski's repeated requests. To be clear, Machinski was denied access to the entirety of his accounts and entirety of funds, and not just the amounts that were under "fraud" investigation.

33.  On or about October 17, 2024, Machinski again contacted the Ally Fraud department. Machinski reached an agent named Tim Doe. Tim Doe informed Machinski that the investigation was triggered because his immediate supervisor suspected that the two checks deposited by Machinski on October 1, 2024, were fraudulent. Machinski expressed his disagreement over this baseless allegation and assured Tim Doe that both checks were legitimate. Machinski provided further specific details on the two checks to assist in validation of the deposits. Tim Doe informed Machinski that the investigation would wrap up soon enough

and to just be patient. No timeline was provided as to when the investigation would be completed, and when Machinski's entire account would be unfrozen, and his deposits be made available to Machinski.

34. On October 21, 2024, Machinski again contacted the Ally Bank fraud department. Coincidentally, Tim Doe answered the call again. Machinski emphasized that it is now 20 days since the two checks were deposited. Machinski noted there was no outside claim for fraud by any party on either of these genuine checks. After a heated back and forth, Tim Doe agreed with Machinski to release the lock on the account and free up funds. After the call, Machinski validated access to his account.

35. Later that night (October 21, 2024) Machinski went to a local Safeway with his young daughter to make a grocery purchase with his Ally debit card. That transaction was declined with no further information nor warning. Ally provided no communication of any further issues with the account before this visit to Safeway. To be clear, Machinski was unable to purchase groceries for his daughter or his family due to declination of his card, and without access to any of his money.

36. The next morning, on October 22, 2024, Machinski contacted the Ally fraud department. Once again, and by coincidence, Tim Doe fielded the call. Tim Doe explained that soon after he released the lock on Machinski's account on October 21, 2024, his supervisor Mariah Doe intervened and insisted that Machinski's account be locked back up until the investigation concluded. Machinski demanded an explanation on the lengthy status of this investigation and demanded a release of his funds. During this period, Machinski could not access *any* of his funds whatsoever. Tim Doe revealed that only two days earlier (i.e., on October 20, 2024) Ally Bank finally contacted Santander Bank to validate the check in the amount of $12,681.28. Tim Doe indicated that Santander Bank had not reached back

to Ally Bank to validate the check. Tim Doe also revealed that Ally Bank placed calls to the issuers of the $3,000 check but the individual too had not returned calls. Machinski reiterated to Tim Doe that the Santander check was issued by a Probate Attorney (an officer of the court) and the check was made as an "OFFICIAL" bank check directly by Santander Bank at the bequest of the probate attorney. Ally Bank could have contacted the Probate Attorney to validate that check, but, bewilderingly, they chose not to for many weeks. Machinski also emphasized to Tim Doe that the personal check of $3,000 was not the first time that he deposited checks from this issuer into his Ally account. That could easily be validated as there was never any incident with previous deposits from this same individual issuer.

37.   At his wit's end, Machinski was unable to make any payments from, or access, his Ally bank accounts. Machinski then suggested to Tim Doe that Ally Bank was in violation of federal banking regulations, federal and state laws. Machinski warned Tim Doe that he would file a lawsuit in the US District Court if the funds were not immediately released by the following day. As of the date of this complaint (days after Machinski's last call with Ally Bank), Machinski still has no access to his account and no access to his funds.

38.   On October 23, 2024, Machinski visited the City of Campbell, CA Police Department to file a criminal police report. The desk officer declined to log in a police report noting that this action is purely a civil matter between Machinski and Ally Bank. Therefore, a police report is not available or possible to attach to this complaint.

39.   As a result of Ally's actions or omissions, Machinski was unable to make payments for his mortgage, utility companies, credit cards, and many necessary expenses to live in Silicon Valley. Ally's gross negligence in locking up Machinski's accounts fell below the standard for verifying the authenticity of account transactions and is in violation of federal regulations de minimis.

# FIRST CAUSE OF ACTION

**Failure to Provide Access to Plaintiff's Accounts, Failure to Investigate in Good-Faith, and Other Statutory Violations Against All Defendants**
(*See* Electronic Fund Transfer Act, 15 U.S.C. § 1693 *et seq.*)

40. Plaintiff Machinski incorporates by reference the allegations raised in all preceding paragraphs.

41. At all times relevant to this Complaint, Machinski held title to his Ally Bank accounts as a natural person. At all times relevant to this Complaint, no corporation, nor any other business entity, held title to any of Machinski's accounts. Thus, as a natural person, Machinski is defined as a "consumer" under the Electronic Funds Transfer Act ("EFTA"). *See* 15 U.S.C. § 1693a(2) (EFTA applies to accounts used primarily for personal, family, or household purposes); *See* Fischer and Mandell LLP v. Citibank, N.A., No. 09-CV-1160-RJS, 2009 WL 1767621.

42. Plaintiff Machinski repeatedly demanded access to his funds as protected under the Electronic Fund Transfer Act of 1978, 15 U.S.C. § 1693. Ally Bank intentionally and willfully denied Machinski access to his funds in direct violation of EFTA. Ally Bank fictitiously accused Machinski of depositing fraudulent checks into his account, notwithstanding evidence at hand proving beyond any doubt that the checks were in fact genuine and legitimate. Ally Bank had no reasonable basis for alleging the two distinct and independent checks were fraudulent.

43. Per EFTA, Regulation E, A financial institution shall promptly investigate and determine whether an error occurred within ten business days of receiving a notice of error. It has now been over 23 days since Machinski deposited the two checks. Defendant Ally Bank has not released funds, has failed to complete (or even conduct) their investigation, has not provided written notice of the investigation, and has not willfully provided any communication regarding the account lock.

44. Defendants failed to conduct a good-faith investigation of the suspected fraudulent deposits and are therefore in violation of 15 U.S.C. § 1693f(e)(1)(A).

45. Specifically, Defendant's conduct as set forth herein constitutes a failure to investigate in good faith and a failure to establish a reasonable basis for alleging that Plaintiff's deposits were fraudulent. Defendant's conduct also constitutes a knowing and willful conclusion that Plaintiff's deposits were fraudulent when such conclusion could not have been drawn from the available evidence, and for this reason constitutes a violation of 1693f(e), entitling Plaintiff to treble damages in addition to all other relief sought herein.

46. As a direct and proximate result of Ally Bank's conduct, Machinski has suffered actual damages, including, but not limited to, past and future monetary loss, past and future mental distress, emotional anguish, and other damages that will be presented to the trier of fact.

47. As a direct and proximate result of Defendant's violations of the EFTA, Plaintiff is entitled to declaratory judgment, actual damages, statutory damages, treble damages, costs, and reasonable attorneys' fees.

**SECOND CAUSE OF ACTION**
**Failure to Timely Credit Deposits Against All Defendants**
(Expedited Funds Availability Act (EFAA) of 1987)
(Check Clearing for the 21st Century Act ("Check 21 Act") of 2003)
(Or Collectively 12 CFR Part 229, Regulation CC)

48. Machinski incorporates by reference the allegations raised in all preceding paragraphs.

49. In 1987, Congress passed the Expedited Funds Availability Act (EFAA), to address concerns about the lengths of holds banks were then placing on checks deposited by their customers. The EFAA establishes maximum permissible hold periods for checks and other deposits.

50. In 2003, Congress passed the Check Clearing Act for the 21st Century (Check 21 Act), which is designed to enhance payment system efficiency by reducing legal impediments to

processing checks electronically.

51. Title 12 of the Code of Federal Regulation (CFR) part 229, or currently known as "Regulation CC", incorporates and codifies the two check clearing acts of EFAA and the Check 21 Act.

52. In 2010, and as a result of Regulation CC, the Federal Reserve consolidated all its check processing operations into a single region. That effort reduced forty-five paper processing offices down to one electronic processing operation. All checks are now considered as "local checks" and are technically available by the first business day after the day of deposit.

53. In most cases, deposits under $5,525 shall be available in one to two business days maximum.

54. For deposits over $5,525 (i.e., large deposit), banks can extend the hold period for a reasonable amount of time, which is typically up to five business days. Regulation CC invokes a timeline of not to exceed seven business days to clear large deposits, regardless of form. If such a hold is placed, the bank shall notify the account holder with the reason for the hold and state when the funds will be available. Ally Bank provided no such notice of hold.

55. Upon information and belief, Defendant Ally Bank is in violation with Regulation CC. As it stands Defendant Ally Bank is 23 days, and still counting, to clear two routine and ordinary check deposits. Again, notwithstanding the evidence provided to Ally Bank from Machinski on the validity of the checks. Also, notwithstanding that Machinski has not once had any incidence of fraud in his six plus years affiliation with Ally Bank.

56. Defendant's conduct harmed Plaintiff because Plaintiff was locked out of his rightful funds, subjected to denial of pre-authorized electronic payments, including mortgage payments, paying utility bills, and paying other creditors. Plaintiff was declined routine debit

card transactions at point-of-sale (POS) merchants.

57. As a direct and proximate result of Defendant's conduct, Plaintiff suffered actual damages, including but not limited to, past and future monetary loss, statutory damages, past and future emotional distress and anguish, and other damages that will be presented to the trier of fact.

### THIRD CAUSE OF ACTION
### Negligence Against All Defendants

58. Machinski incorporates by reference the allegations raised in all preceding paragraphs.

59. As a customer of Ally Bank, Ally Bank owed Plaintiff a duty of reasonable care. Notably, Ally Bank owed Machinski a duty to provide access to his financial assets in accordance with federal banking regulations.

60. Ally Bank breached that duty by failing to make any reasonable effort to investigate their false allegation that the Machinski deposited fraudulent checks. Not just one check, but two independent and distinct checks were alleged by Ally bank as fraudulent. Specifically, Ally Bank locked Machinski out of his entire account, including all his funds, on October 10, 2024, and he is still locked out to this date. Machinski repeatedly called Ally Bank demanding prompt resolution. Many times, Machinski was placed on hold for hours at a time and provided no timeline regarding when this investigation would conclude. Alarmingly, it was not until two weeks after Ally initially locked Machinski's account that Ally attempted any contact with one of the banks issuing a check. Recalling Defendant Tim Doe revealed on a call with Machinski that no such contact with Santander occurred until October 18, 2024. Tim Doe claims Ally Bank is still awaiting a call back from Santander. Machinski queried "What if Santander Bank never calls you back? Will you lock my account forever?" Tim Doe stated "well, not forever." No other details were provided to Machinski when access to his accounts would be restored.

61.     Defendant breached their duty to exercise reasonable care by first alleging fraud committed by their very own customer with a clean banking history, and absent of any evidence of fraud whatsoever. Considering the positive history of six plus years of Machinski as a customer without any incident of fraud, Defendant contorted straight facts with false allegations. Machinski offered Ally credible evidence to substantiate the checks as genuine, but Ally failed to conduct any diligence as part of their investigation into this matter.

62. As a direct and proximate result of Defendant's conduct, Plaintiff suffered actual damages, including but not limited to, past and future monetary loss, past and future emotional distress and anguish, and other damages that will be presented to the trier of fact. Plaintiff remains locked out of his rightful funds.

**FOURTH CAUSE OF ACTION**
**Negligent Misrepresentation Against All Defendants**
*(California Civ. Code § 1572, et seq., § 1710, et seq.)*

63.     Machinski incorporates by reference the allegations raised in all preceding paragraphs.

64.     At the time Defendants made the false representations, and fraudulent concealment of material facts, as set forth above, they knew, or should have known, the representations were false and included fraudulent concealment of material facts. Defendants should have discovered the true facts through reasonable inquiry and diligence, even if said facts were not known to them at the time of making the misrepresentations and omissions. Defendants intended for Plaintiff to rely on the misrepresentations and omissions.

65.     Defendant failed to notify Defendants of the reasons for the initial hold. Defendants made a false representation and fraudulent concealment of material facts with respect to (i) why these checks were under investigation; (ii) that it was "under investigation" when no investigation was taking place; (iii) failure to communicate why the entirety of his account was

frozen even though two checks were at issue; and (iv) failure to release funds within the time required. The above-described acts of Defendants constitute negligent misrepresentation to Plaintiff, and their misrepresentations and omissions were intended to, and did, induce Plaintiff not to take legal action, while such investigation continued. Had Plaintiff known the facts, he would not have taken such action and were a substantial cause of the damage and injury to the Plaintiff.

66. As a direct and proximate result of Defendant's conduct, Plaintiff suffered actual damages, including but not limited to, past and future monetary loss, past and future emotional distress and anguish, and other damages that will be presented to the trier of fact.

## PRAYER FOR RELIEF

Wherefore, Plaintiff seeks judgment in his favor and damages against Defendants:

A. That this honorable Court order Defendants to release all locks and holds on Plaintiff's financial accounts and provide Plaintiff access to his funds;

B. That this honorable Court issue a declaratory judgment that Defendants' policies and practices complained of herein are unlawful and violated the EFTA and Regulation CC, inter alia;

C. A preliminary and permanent injunction against Defendants and their officers, agents, successors, employees, representatives, and all persons acting in concert with them, from engaging in each of the unlawful policies and practices set forth herein;

D. Awarding Plaintiff actual damages, treble damages, statutory damages, punitive damages, costs, and reasonable attorneys' fees; and

E. Such other and further relief, including equitable and declaratory relief, as may be necessary, just, and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury of all issues triable by jury.

DATED: October 25, 2024

Respectfully submitted,

By: _____
ROBERT MACHINSKI
Pro Se, Plaintiff