MARY KATE SULLIVAN (State Bar No. 180203)
mks@severson.com
SEVERSON & WERSON
A Professional Corporation
595 Market Street, Suite 2600
San Francisco, California 94105
Telephone: (415) 398-3344
Facsimile: (415) 956-0439

ELIZABETH C. FARRELL (State Bar No. 280056)
ecf@severson.com
SEVERSON & WERSON
A Professional Corporation
The Atrium
19100 Von Karman Avenue, Suite 700
Irvine, California 92612
Telephone: (949) 442-7110
Facsimile: (949) 442-7118

Attorneys for Defendant ALLY BANK

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| ROBERT MACHINSKI,<br><br>              Plaintiff,<br><br>     vs.<br><br>ALLY BANK; MARIAH DOE; AND TIM DOE,<br><br>              Defendants. | Case No. 5:24-cv-07452-PCP<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>*Filed concurrently with Request for Judicial Notice and (Proposed) Order*<br><br>Date:     March 20, 2025<br>Time:     10:00 a.m.<br>Crtrm.:   8, 4th Floor<br><br>The Hon. P. Casey Pitts<br><br>Trial Date:          None Set |

## NOTICE OF MOTION

Please take notice that on March 20, 2025 at 10:00 a.m. or as soon thereafter as counsel may be heard in Courtroom 8, 4th Floor of the above-entitled Court at 280 South First Street, San Jose, California 95113, Defendant Ally Bank ("Ally") will, and it hereby does, move to dismiss the first amended complaint.

This motion is brought under Fed. R. Civ. P. 12(b)(6) and is based on this notice, the accompanying memorandum of points and authorities, the first amended complaint, and all other records and papers on file in this action.

The motion is made on the ground that the first amended complaint does not allege any claim on which relief may be granted.

DATED:  February 13, 2025      SEVERSON & WERSON
A Professional Corporation


By: _____*/s/ Elizabeth C. Farrell*_____
     ELIZABETH C. FARRELL

Attorneys for Defendant ALLY BANK

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ........................................................................................................1

II.   ISSUES TO BE DECIDED ......................................................................................2

III.  THE PERTINENT FACTS .......................................................................................2

IV.  LEGAL STANDARD ..............................................................................................4

V.   THE FEDERAL CLAIMS SHOULD BE DISMISSED .........................................5

     A.     The EFTA Claim Lacks Merit ....................................................................5

     B.     The Reg CC Claim is Equally Defective ....................................................6

VI.  THE REMAINING STATE LAW CLAIMS SHOULD BE DISMISSED ...........8

     A.     The Court Should Decline to Exercise Supplemental Jurisdiction Over the State Law Claims ......................................................................................8

     B.     Utah Law Applies to Machinski's State Law Claims ................................8

           1.     The Contract Claim Fails Under Utah Law ...................................11

           2.     The Negligence Claim Fails Under Utah Law ..............................12

           3.     The Fraud Claims Should be Dismissed as Fatally Defective Under Utah Law .....................................................................................14

           4.     Utah Law Precludes Machinski's § 17200 Claim .......................16

           5.     California Law Would Yield no Different Result .........................17

VII. CONCLUSION .......................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Andraos v. Union Cent. Life Ins. Co.*,
    No. CV098815ODWFFMX, 2010 WL 11515306 (C.D. Cal. Jan. 12, 2010) ........................ 10

*Armed Forces Ins. Exch. v. Harrison*,
    2003 UT 14, 70 P.3d 35 ............................................................................................... 14

*Armstrong Petroleum Corp. v. Tri-valley Oil & Gas Co.*,
    116 Cal.App.4th 1375 (2004) ..................................................................................... 17

*Arrow Indus., Inc. v. Zions First Nat. Bank*,
    767 P.2d 935 (Utah 1988) .......................................................................................... 13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..................................................................................................... 4

*Beffa v. Bank of W.*,
    152 F.3d 1174 (9th Cir. 1998) ..................................................................................... 7

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ..................................................................................................... 4

*Borman v. Brown*,
    59 Cal.App.5th 1048 (2021) ....................................................................................... 17

*Cannon v. Wells Fargo Bank N.A.*,
    917 F.Supp.2d 1025 (N.D. Cal. Jan. 9, 2013) ........................................................... 16

*Canopy Corp. v. Symantec Corp.*,
    395 F.Supp. 2d 1103 (D. Utah 2005) ......................................................................... 12

*Clinton v. Sec. Benefit Life Ins. Co.*,
    63 F.4th 1264 (10th Cir. 2023) ................................................................................... 15

*CollegeNet, Inc. v. Xap Corp.*,
    No. CV–03–1229–HU, 2004 WL 2303506 (D. Or. Oct. 12, 2004) ............................ 16

*In re D.E.I. Sys., Inc.*,
    No. ADV 02082, 2011 WL 1261603 (Bankr. D. Utah Mar. 31, 2011) ...................... 11

*DeBry v. Valley Mortgage Co.*,
    835 P.2d 1000 (Utah Ct.App.1992) ........................................................................... 15

*DriverDo LLC v. JP Morgan Chase Bank, N.A.*,
    No. 20 C 5046, 2022 WL 3645909 (N.D. Ill. Aug. 24, 2022) ..................................... 7

*Dyack v. Northern Mariana Islands,*
    317 F.3d 1030 (9th Cir. 2003) ............................................................................ 8

*Espinoza v. Walmart Inc.,*
    No. 19-CV-1972-MMA (RBB), 2020 WL 13886119 (S.D. Cal. Apr. 16, 2020) .................... 9

*Fuller v. BMO Bank,*
    2024 WL 4403875 (C.D. Cal., Aug. 16, 2024, No. CV 24-1800-CBM-KSX) ...................... 6

*Gaddy v. Corp. of President of Church of Jesus Christ of Latter-Day Saints,*
    451 F. Supp. 3d 1227 (D. Utah 2020) ................................................................ 15

*Gaskin v. BMO Harris Bank NA,*
    No. CV-23-01919-PHX-SMB, 2024 WL 1961843 (D. Ariz. May 3, 2024) .................. 7, 8

*In re Gilead Scis. Sec. Litig.,*
    536 F.3d 1049 (9th Cir. 2008) ............................................................................ 4

*Glenn K. Jackson Inc. v. Roe*
    (9th Cir. 2001) 273 F.3d 1192 ........................................................................... 17

*Grynberg v. Questar Pipeline Co.,*
    2003 UT 8, 70 P.3d 1 ........................................................................................ 13

*Hardin v. Bank of America, N.A.,*
    2022 WL 3568568 (E.D. Mich., Aug. 18, 2022, No. 2:22-CV-10023) ......................... 6

*Hermansen v. Tasulis,*
    2002 UT 52, 48 P.3d 235 .............................................................................. 13, 15

*Jamerson v. UMG Recordings, Inc.,*
    No. CV1302825MMMJCX, 2014 WL 12588642 (C.D. Cal. Apr. 14, 2014) ............... 9, 16

*Johnson v. Montpelier One LLC,*
    No. 19-CV-06214-EJD, 2020 WL 3504458 (N.D. Cal. June 28, 2020) .......................... 8

*Kaldenbach v. Mutual of Omaha Life Ins. Co.,*
    178 Cal.App.4th 830 (2009) ............................................................................... 17

*Krantz v. BT Visual Images, LLC*
    (2001) 89 Cal.App.4th 164 ................................................................................. 17

*Kurtz-Ahlers, LLC v. Bank of America, NA.,*
    48 Cal.App.5th 952 (2020) ................................................................................. 17

*Lee v. City of Los Angeles,*
    250 F.3d 668 (9th Cir. 2001) ............................................................................... 5

*Legal Tender Servs. PLLC v. Bank of Am. Fork,*
    2022 UT App 26, 506 P.3d 1211 ....................................................................... 13

*Little Donkey Enterprises Washington, Inc. v. U.S. Bancorp*,
    136 Fed.Appx. 91 (9th Cir. 2005) ................................................................ 7

*LLC v. Superior Court*,
    189 Cal. App. 4th 500, 116 Cal.Rptr.3d 923 (2010) ................................... 9

*Lusk v. Kellogg*
    (C.D.Cal. Aug. 10, 2011) 2011 U.S.Dist.LEXIS 164153 ......................... 13

*Madrid v. Perot Systems Corp.*,
    130 Cal.App.4th 440 (2005)........................................................................ 17

*Mandel v. Hafermann*,
    503 F. Supp. 3d 946 (N.D. Cal. 2020) ...................................................... 11

*McDougal v. Weed*,
    945 P.2d 175 (Utah Ct.App.1997)............................................................. 15

*Medimatch, Inc. v. Lucent Techs., Inc.*,
    120 F. Supp. 2d 842 (N.D. Cal. 2000) ...................................................... 10

*Nedlloyd Lines B.V. v. Superior Ct.*,
    3 Cal.4th 459 (1992)............................................................................... 9, 10

*Otworth v. Southern Pac. Transp. Co.*,
    166 Cal.App.3d 452 (1985)........................................................................ 17

*Outdoor Media Grp., Inc. v. City of Beaumont*,
    506 F.3d 895 (9th Cir. 2007)....................................................................... 5

*Ruiz v. Affinity Logistics Corp.*,
    667 F.3d 1318 (9th Cir. 2012) ................................................................... 11

*Salustri v. Dell, Inc.*,
    No. EDCV0902262SJODTBX, 2010 WL 11596554 (C.D. Cal. Apr. 27, 2010) ................... 10

*Sawyer v. Bill Me Later, Inc.*,
    2011 U.S. Dist. LEXIS 154784 (C.D. Cal. Oct. 21, 2011) ......................... 9

*Shah v. Intermountain Healthcare, Inc.*,
    2013 UT App 261, 314 P.3d 1079 ............................................................. 14

*Storey v. Seipel*,
    No. 2:22-CV-00486-RJS-DAO, 2024 WL 4436609 (D. Utah Oct. 24, 2024)........................ 12

*UBS Bank USA v. Ibby, LLC*,
    No. 2:09-CV-372 TS, 2009 WL 4884383 (D. Utah Dec. 10, 2009) ....................... 13

*Ungureanu v. A. Teichert & Son*,
    No. CIV S-11-0316 LKK, 2011 WL 4862425 (E.D. Cal. Oct. 13, 2011) ............................ 10

*Usher v. City of Los Angeles*,
   828 F.2d 556 (9th Cir. 1987) ................................................................. 4

*Yei A. Sun v. Advanced China Healthcare, Inc.*,
   901 F.3d 1081 (9th Cir. 2018) ............................................................. 10

**Statutes**

12 U.S.C. § 4002(a)(2) ............................................................................ 7

12 U.S.C. § 4010 ..................................................................................... 7

15 U.S.C. § 1693(b) ................................................................................ 5

15 U.S.C. § 1693a(2) .............................................................................. 5

15 U.S.C. § 1693a(12) ............................................................................ 6

15 U.S.C. § 1693f(a) ............................................................................... 6

28 U.S.C. 1404(a) ................................................................................... 9

28 U.S.C. § 1367(c)(3) ........................................................................... 8

31 U.S.C. §5318(g)(2)(A)(i) .................................................................. 13

I.C.25 Ex. 1 § ......................................................................................... 3

Bank Secrecy Act ................................................................................. 13

Cal. Bus. & Prof. Code § 17200 ............................................. 4, 10, 16, 17

Electronic Funds Transfer Act ............................................................. 1, 5

Electronic Funds Transfer Act (15 USC § 1693) .................................... 4

Electronic Funds Transfer Act, 15 USC § 1693 et seq. ........................... 2

Expedited Funds Availability Act .......................................................... 6

Funds Act ............................................................................................... 7

**Other Authorities**

12 C.F.R. §21.11(k)(1)(i) ...................................................................... 13

12 C.F.R. § 205.3 .................................................................................... 5

12 C.F.R. § 205.11 .................................................................................. 6

12 C.F.R. § 229.10 .................................................................................. 7

12 C.F.R. § 1005.3 ...................................................................................................... 5

12 C.F.R. § 1005.11(a)(1)(i) ...................................................................................... 6

12 C.F.R. § 1005.11(b) ............................................................................................... 6

(12 CFR § 229) ............................................................................................................ 4

Federal Rule of Civil Procedure 8(a) ........................................................................ 4

Rule 9 ........................................................................................................................ 15

Rule 12(b)(6) .............................................................................................................. 4

Utah R.Civ.P. 9(b) .................................................................................................... 14

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

Plaintiff Robert Machinski ("Machinski") has an "Online Spending Account" with Defendant Ally Bank ("Ally"). In October 2024, Machinski electronically deposited two checks into his Ally account, and had access to those funds for ten days "without inciden[t]." *See* First Amended Complaint ("FAC"), Dkt. 15 at ¶ 35. However, an internal fraud investigation resulted in access to Machinski's account being temporarily frozen, meaning Machinski was not able to access any funds that remained in his account between October 10 and October 26, 2024. Machinski now sues Ally for temporarily restricting access to his account while it completed its fraud investigation, and for failing to disclose confidential details concerning its fraud investigation. Machinski suggests Ally had no right to investigate, and was obligated to blindly believe his subjective belief that there was no reason to investigate his account. He has no viable claim.

More specifically, Machinski alleges Ally violated the Electronic Funds Transfer Act or "EFTA" by restricting access to his account after the two checks were deposited, and failing to investigate possible fraud. But, EFTA only applies to electronic transfers, and is only invoked when a consumer identifies a qualifying error. Neither is at issue in this case. Similarly, Machinski improperly invokes Reg CC in connection with the temporary account restriction. Reg CC does not apply to account freezes like the one at issue in this case.

Because Machinski's federal claims lack merit, the Court should decline to exercise supplemental jurisdiction over the remaining state law claims and dismiss this case in its entirety.

Even if the Court were to reach the merits of Machinski's common law claims (to which Utah law applies), they fail for three principal reasons, articulated in more detail below. First, Ally's deposit agreement expressly grants Ally the right to limit

or restrict access to Machinski's account—without liability.  Second, Ally had no legal obligation to disclose information concerning its fraud review, and did not make any misrepresentations concerning that review.  Third, because Utah law governs the parties' dispute, Machinski cannot pursue a claim under California's unfair competition law.  Ally's Motion to Dismiss should therefore be granted.

<h1 style="text-align:center">II.</h1>

<h2 style="text-align:center">ISSUES TO BE DECIDED</h2>

This motion raises eight issues for the Court's determination:

1.      Does the FAC allege a claim for violation of the Electronic Funds Transfer Act, 15 USC § 1693 et seq., upon which relief may be granted?

2.      Does the FAC allege a claim for violation of Regulation CC upon which relief may be granted?

3.      Does Utah law govern Machinski's state law claims?

4.      Does the FAC allege a negligence claim upon which relief may  be granted?

5.      Does the FAC allege a contract claim (breach of contract and breach of the covenant of good faith and fair dealing) upon which relief may be granted?

6.      Does the FAC allege a negligent misrepresentation and concealment claim upon which relief may be granted?

7.      Does the FAC allege an intentional misrepresentation claim upon which relief may be granted?

8.      Does the FAC allege an unfair competition claim upon which relief may be granted?

<h1 style="text-align:center">III.</h1>

<h2 style="text-align:center">THE PERTINENT FACTS</h2>

In May 2018, Machinski opened an Online Spending Account, which may also be referred to as an "OSA" or an "Interest Checking" account, with Ally.  FAC ¶ 28.  When opening the OSA, ending x9173, Machinski agreed to the terms of

Ally's Deposit Agreement (the "Deposit Agreement"). FAC ¶ 72, RJN Ex. 1
(Deposit Agreement); *see also* Dkt. 19 and 19-1 [Motion to Transfer and Decl. in
Support Thereof]. The Deposit Agreement contains a Utah forum selection clause
and choice-of-law provision. RJN Ex. 1 at § I.C. The Deposit Agreement also
expressly states that Ally:

> [R]eserve[s] the right to limit access to your accounts
> which can include temporarily or permanently disabling
> your debit card, removing your online access, restricting
> your account, dishonoring your checks and/or closing your
> accounts without prior notice to you unless prior notice is
> required by law. We do not bear liability for such actions.

RJN Ex. 1 § I.C.25.

Machinski alleges that, on October 1, 2024, he electronically deposited two
checks into the OSA, and had access to the funds for "over a week"—one for
$12,681.28 and another for $3,000.00. FAC at ¶¶ 31-33, 35, 42-43. Then, on
October 10, 2024, access to the OSA was frozen due to an ongoing fraud
investigation. FAC at ¶¶ 36-37. That same day, Machinski attempted to log in to
his OSA via online banking, but he received a message that access had been
restricted because of "too many login attempts." FAC ¶ 37. Ally allegedly
informed Machinski that "his [A]ccount was [] under investigation," that it
suspected the two checks deposited ten days earlier were fraudulent, and that the
OSA would remain locked until the investigation was complete. FAC ¶¶ 37, 39.

On October 21, 2024, Machinski spoke with "Tim Doe" in Ally's fraud
department, who was able to temporarily lift the OSA restriction. FAC ¶ 40.
However, because the fraud investigation had not yet been completed, fraud
supervisor "Mariah Doe" purportedly intervened and again restricted access to the
OSA. FAC ¶ 42. Machinski demanded an explanation regarding the investigation
and further demanded that his funds be released. FAC ¶ 42. Ally explained that it
had contacted, or attempted to contact, the makers of the checks deposited on

October 1.  FAC ¶¶ 42-43.  Ultimately, Ally was able to contact the checks' makers and completed its investigation.  FAC ¶ 42.  And, Machinski's OSA access was restored on October 26, 2024.  FAC ¶ 47.

Machinski now sues Ally for: (1) violation of the Electronic Funds Transfer Act (15 USC § 1693); (2) violation of Regulation CC (12 CFR § 229); (3) negligence; and (4) breach of contract and breach of the covenant of good faith and fair dealing; (5) negligent misrepresentation and concealment; (6)  intentional misrepresentation; and (7) unfair competition (Cal. Bus. & Prof. Code § 17200). *See* FAC.

## IV.

## LEGAL STANDARD

To meet the pleading requirements of Federal Rule of Civil Procedure 8(a) and to survive a Rule 12(b)(6) motion to dismiss, a claim must provide "a short and plain statement ... showing that the pleader is entitled to relief," including "enough facts to state a claim ... that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible on its face if, accepting all factual allegations as true and construing them in the light most favorable to the plaintiff, the Court can reasonably infer that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The plausibility analysis is "context-specific" and not only invites but "requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.

In evaluating a motion to dismiss, the Court must assume that the plaintiff's factual allegations are true and must draw all reasonable inferences in his or her favor. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  But the Court will not " 'accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.' " *In re Gilead Scis. Sec. Litig*., 536 F.3d 1049, 1055 (9th Cir. 2008) (*quoting Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

On a motion to dismiss, the Court is limited to the "allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Outdoor Media Grp., Inc. v. City of Beaumont*, 506 F.3d 895, 899 (9th Cir. 2007) (internal quotation omitted). The Court may also take judicial notice of undisputed matters of public record. *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001).

## V.

## THE FEDERAL CLAIMS SHOULD BE DISMISSED

### A.     The EFTA Claim Lacks Merit

The FAC's first cause of action for violation of the Electronic Funds Transfer Act, or "EFTA," alleges that Machinski demanded access to the funds in his OSA between October 10 and 26, 2024, and that, while the fraud investigation was underway, Ally denied access to those funds "in direct violation of EFTA."  FAC ¶ 50.  Machinski also claims Ally failed to complete an investigation required by EFTA regarding the October 1 check deposits, and failed to provide communication "regarding the account lock."  (FAC ¶¶ 51-53.)  The allegations do not state an EFTA claim.

The EFTA creates a "framework[of] rights, liabilities, and responsibilities of participants in electronic fund transfer systems."  15 U.S.C. § 1693(b).  The Act applies to electronic fund transfers from a "consumer account," which is defined as a "demand deposit, savings deposit, or other asset account."  15 U.S.C. § 1693a(2). Just as important is knowing the types of transactions EFTA does not apply to— including checks.  *See* 12 C.F.R. § 205.3 (defining "electronic fund transfer" and stating "[t]he term electronic fund transfer does not include ... [a]ny transfer of funds originated by check, draft, or similar paper instrument"); 12 C.F.R. § 1005.3 (stating "[e]xclusions from coverage" under the EFTA include "[c]hecks").

Because EFTA does not apply to the deposit of checks—the only transactions at issue in this case—dismissal is warranted.

Even if EFTA applies (it does not), in order to trigger a financial institution's obligations—including the obligation to investigate—a consumer must identify a qualifying error. 15 U.S.C. § 1693f(a); 12 C.F.R. § 1005.11(b).  Qualifying errors include: "unauthorized electronic fund transfer[s]," 12 C.F.R. § 1005.11(a)(1)(i); "[t]he omission of an electronic fund transfer from a periodic statement," § 1005.11(a)(1)(iii); "[t]he consumer's request for documentation required by... § 1005.10(a) or for additional information or clarification concerning an electronic fund transfer, including a request the consumer makes to determine whether an error exists," § 1005.11(a)(1)(vii).  Under EFTA, an "unauthorized electronic transfer" is defined as "an electronic fund transfer from a consumer's account initiated by a person other than the consumer without actual authority to initiate such transfer and from which the consumer receives no benefit."  15 U.S.C. § 1693a(12).

The FAC identifies no qualifying error, either.  Machinski admittedly deposited the October 1, 2024 checks into his OSA, and takes no issue with their deposit—only his ability to access the funds during Ally's investigation.  FAC ¶ 31.

But, Ally's subsequent fraud investigation, which resulted in a temporary freeze or restriction on Machinski's OSA, cannot support an EFTA claim.  Indeed, " 'errors' for purposes of 12 C.F.R. § 205.11 and the EFTA do not include the [] account freezes…." *Fuller v. BMO Bank*, 2024 WL 4403875, at *3 (C.D. Cal., Aug. 16, 2024, No. CV 24-1800-CBM-KSX); *see also Hardin v. Bank of America, N.A.*, 2022 WL 3568568, at *3 (E.D. Mich., Aug. 18, 2022, No. 2:22-CV-10023) (noting that "EFTA does not regulate account freezes…" such as when access to an account is restricted "pending an investigation").

Because EFTA has no application to the facts of this case, dismissal is warranted.

## B.  The Reg CC Claim is Equally Defective

In the second cause of action for "failure to timely credit deposits," Machinski accuses Ally of violating the Expedited Funds Availability Act or "EFAA," and its

implementing regulation ("Reg CC"), which addresses the hold length that a bank can place on deposited checks. FAC ¶ 57. But, this case does not involve an improper deposit hold either.

The EFAA was enacted by Congress to "provide faster availability of deposited funds." *Beffa v. Bank of W.*, 152 F.3d 1174, 1176 (9th Cir. 1998) (citing S. Rep. No. 100-19, at 25). The statute funds deposited by check to "be available for withdrawal not later than the business day after the business day on which such funds are deposited…." 12 U.S.C. § 4002(a)(2); s*ee also* 12 C.F.R. § 229.10 ("A depositary bank shall make funds deposited in an account by check available for withdrawal not later than the business day after the banking day on which the funds are deposited....").

Although the EFAA and Reg CC do govern check deposits, "[m]erely placing a hold on or freezing funds in an account **after [a] deposit[ has] been made available** is **not** a violation of the Funds Act and thus does not support a claim for civil liability under 12 U.S.C. § 4010." *Little Donkey Enterprises Washington, Inc. v. U.S. Bancorp*, 136 Fed.Appx. 91, 92 (9th Cir. 2005) (emphasis added); *Gaskin v. BMO Harris Bank NA*, No. CV-23-01919-PHX-SMB, 2024 WL 1961843, at *3 (D. Ariz. May 3, 2024) ("However. the EFAA does not prohibit account freezes resulting from suspicious activity, and a bank is not liable under the EFAA for freezing an account."); *DriverDo LLC v. JP Morgan Chase Bank, N.A.*, No. 20 C 5046, 2022 WL 3645909, at *6 (N.D. Ill. Aug. 24, 2022) ("Here, …[the plaintiff] was unable to withdraw or transfer any funds whatsoever due to a freeze on the account. [Reg CC] is therefore inapplicable.").

Here, the FAC concedes the October 1, 2024 checks "cleared" and that Machinski had access to those funds "[f]or over a week…without inciden[t]." FAC ¶¶ 31, 35. It was ten days later, when Ally initiated a fraud investigation, that Machinski's OSA access was restricted and he was unable to access those funds (or any other funds in the OSA). FAC ¶¶ 37-39, 47. Under the authority cited above,

Ally is "not liable under the EFAA for freezing [Machinski's] [A]ccount" after the checks were deposited. *Gaskin*, 2024 WL 1961843, at *3. The EFAA/Reg CC claim should be dismissed for this reason.

**VI.**
**THE REMAINING STATE LAW CLAIMS SHOULD BE DISMISSED**

**A.     The Court Should Decline to Exercise Supplemental Jurisdiction Over the State Law Claims**

"District courts 'may'—and often do—'decline to exercise supplemental jurisdiction' if, as here, they have 'dismissed all claims over which [they have] original jurisdiction.' " *Johnson v. Montpelier One LLC*, No. 19-CV-06214-EJD, 2020 WL 3504458, at *3 (N.D. Cal. June 28, 2020) (citing 28 U.S.C. § 1367(c)(3)); *Dyack v. Northern Mariana Islands*, 317 F.3d 1030, 1037-38 (9th Cir. 2003) (explaining that 28 U.S.C. § 1367(c)(3) permits the district court to decline to exercise supplemental jurisdiction over state law claims where the district court "has dismissed all claims over which it has original jurisdiction").

As explained above, Machinski has no viable claim over which the Court has original jurisdiction. *See* Section V, *supra*; see also FAC ¶ 8 (citing EFTA and the EFAA/Reg CC as the sole basis for original jurisdiction). The Court should therefore decline to exercise supplemental jurisdiction over Machinski's remaining state law claims.

**B.     Utah Law Applies to Machinski's State Law Claims**

Even if the Court were to exercise supplemental jurisdiction, Machinski's state law claims should be dismissed for failure to state a claim.

As an initial matter, Machinski's claims are governed by Utah law because Ally's Deposit Agreement contains a Utah choice-of-law provision. RJN, Ex. 1. The Deposit Agreement plainly states that "[a]ll of our actions relating to [the OSA]…will be governed by the laws and relations of the United States and, to the

extent not preempted, the laws and regulations of the State of Utah."[1]  RJN Ex. 1;

*see also* Dkt. 19-1 [Motion to Transfer Decl.].  In the event Ally's motion to transfer

venue pursuant to 28 U.S.C. 1404(a) is denied, which motion is being filed

concurrently herewith, this Court should apply Utah law and dismiss Machinski's

state law claims.[2]

"In general, 'California uses the [three-part] test set forth in *Nedlloyd Lines B.*

*V. v. Superior Court*[, 3 Cal.4th 459 (1992),] to determine whether to enforce a

choice of law provision. This test draws heavily on section 187 of the Restatement

Second of Conflict of Laws[.] [Citation]. Section 187 'reflects a strong policy

favoring enforcement of such provisions.' [Citation]." *Jamerson v. UMG*

*Recordings, Inc.*, No. CV1302825MMMJCX, 2014 WL 12588642, at *3 (C.D. Cal.

Apr. 14, 2014).

The first step is determining whether there is a substantial relationship to

Utah, or a reasonable basis for choosing Utah law.  *See, e.g.*, *1-800-Got Junk? LLC*

*v. Superior Court*, 189 Cal. App. 4th 500, 505, 116 Cal.Rptr.3d 923 (2010) (finding

"designation of Washington law... given that state's proximity to Got Junk's

headquarters in Vancouver, Canada" reasonable); *Espinoza v. Walmart Inc.*, No. 19-

CV-1972-MMA (RBB), 2020 WL 13886119, at *5 (S.D. Cal. Apr. 16, 2020)

("Under the Restatement Approach, Utah has a substantial relationship to the

parties. Green Dot Bank has its principal place of business in Sandy, Utah; is

charted under Utah law; and "is subject to supervision, regulation[,] and

examination by the Utah Department of Financial Institutions.").  Undoubtedly,

there is.  Ally is headquartered in Utah, and the allegedly wrongful conduct occurred

there.  FAC ¶¶ 14, 19 (conceding that Ally is headquartered in Utah and is

---

[1] A valid choice-of-law clause, such as this, "which provides that a specified body of law 'governs' the 'agreement' between the parties, encompasses all causes of action arising from or related to that agreement…." *Nedlloyd Lines B.V. v. Superior Ct.*, 3 Cal.4th 459, 470 (1992).

[2] *See Sawyer v. Bill Me Later, Inc.*, 2011 U.S. Dist. LEXIS 154784, at *24 (C.D. Cal. Oct. 21, 2011) (noting that "[d]etermination of whether California or Utah law applies is a task for the [transferee court]").

"incorporated under the laws of the state of Utah.").

When either test is met—and this case easily satisfies both tests—"the court must next determine whether the chosen state's law is contrary to a *fundamental* policy of California.[3]  If there is no such conflict, the court shall enforce the parties' choice of law." *Nedlloyd Lines B.V. v. Superior Ct.*, 3 Cal. 4th 459, 466 (1992).  As the party opposing enforcement of a choice of law provision, Machinski "must point to **a statute or judicial decision** that clearly states such a strong public policy." *Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1090 (9th Cir. 2018) (emphasis added).  If there is a conflict, the court must proceed to determine whether California has a "materially greater interest" than the chosen state in resolving the particular issue in question.  *Id.* at 466.

Here, the FAC does not, and cannot, point to a *fundamental* California policy that would preclude enforcement of the parties' choice of law provision.  Aside from federal claims (which do not implicate any state policies), Machinski alleges common law claims for negligence, breach of contract, intentional and negligent misrepresentation, and violation of Cal. Bus. & Prof. Code § 17200.  However, courts have made clear that "common law claims [such as these] …do not meet the meaning of 'fundamental public policy.'"  *Salustri v. Dell, Inc.*, No. EDCV0902262SJODTBX, 2010 WL 11596554, at *7 (C.D. Cal. Apr. 27, 2010); *Ungureanu v. A. Teichert & Son*, No. CIV S-11-0316 LKK, 2011 WL 4862425, at *8 (E.D. Cal. Oct. 13, 2011) (holding that fraud claim not implicate a fundamental public policy).  Further, because Machinski's Bus. & Prof. Code § 17200 claim is predicated on his federal and/or common law claims it, too, fails to invoke a fundamental California policy.  *Andraos v. Union Cent. Life Ins. Co.*, No. CV098815ODWFFMX, 2010 WL 11515306, at *4 (C.D. Cal. Jan. 12, 2010)

---

[3] "The mere fact that the chosen law provides greater or lesser protection than California law, or that in a particular application the chosen law would not provide protection while California law would, are not reasons for applying California law." *Medimatch, Inc. v. Lucent Techs., Inc.*, 120 F. Supp. 2d 842, 862 (N.D. Cal. 2000).

("Plaintiffs' statutory claim, however, is predicated entirely on their common law claims, and is not so stated as to implicate a fundamental public policy.").

Because applying Utah law is not contrary to a *fundamental* policy of California, the Court need not go further.

However, application of Utah law is also appropriate because California does not have a "materially greater interest" than Utah in resolving the parties' dispute. To determine which state has the materially greater interest, the Court considers "(1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; and, (5) the domicile, residence, nationality, place of incorporation, and place of business of the parties." *Ruiz v. Affinity Logistics Corp.*, 667 F.3d 1318, 1324 (9th Cir. 2012). Here, Ally is an online-only bank, meaning it has no physical banking locations, but is headquarters in Utah. FAC ¶¶ 14, 19, 26. So, when Machinski applied to open the OSA with Ally, Utah was arguably the place of contracting, negotiation, and performance—at least as far as Ally is concerned. Utah is also where the allegedly wrongful conduct occurred. *See* FAC. For these reasons, should the Court reach the "materially greater interest" analysis, it should conclude that Utah, not California, has a materially greater interest in resolving the parties' dispute. And, as explained below, Machinski fails to allege a viable claim under Utah law.

### 1. The Contract Claim Fails Under Utah Law

Machinski's fourth cause of action is for "breach of contract and breach of the covenant of good faith and fair dealing." Under Utah law, "the elements of a breach of contract[4] claim are '(1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages.' [Citations]." *Mandel v. Hafermann*, 503 F. Supp. 3d 946, 973 (N.D. Cal. 2020). The plaintiff must plead the terms of the contract so the Court can deduce whether the contract terms actually

---

[4] "The relationship of bank and depositor is that of debtor and creditor, founded upon contract." *In re D.E.I. Sys., Inc.*, No. ADV 02082, 2011 WL 1261603, at *3 (Bankr. D. Utah Mar. 31, 2011).

1  condemn Ally's alleged misconduct.  Otherwise, a breach of contract claim fails to

2  cross "the line from conceivable to plausible." *Storey v. Seipel*, No. 2:22-CV-00486-

3  RJS-DAO, 2024 WL 4436609, at *8 (D. Utah Oct. 24, 2024).

4      Here, Machinski fails to meet his pleading burden.  He identifies no specific

5  contract provision that required Ally to conduct a "good faith" investigation.  FAC ¶

6  72.  None exists.  *See* RJN Ex. 1.  The Deposit Agreement's only reference to an

7  obligation to "investigate" is found within the provision governing electronic

8  transfers.  But, as explained above, that provision does not apply because Machinski

9  has identified no electronic transfer, much less one that was in error.  *See* Section

10  V.A., *supra*.  Moreover, the Deposit Agreement expressly grants Ally the sole right

11  to "limit access" to the OSA—without liability.  RJN Ex. 1.  To the extent

12  Machinski's contract claim is premised upon the OSA freeze/restriction, it fails for

13  this additional reason.

14      The contract claim also argues that a violation of EFTA and/or Reg CC also

15  constitutes a breach of the Deposit Agreement.  *See* FAC ¶ 72.  Machinski fails to

16  identify any contract provision that would make a violation of EFTA and/or Reg CC

17  a violation of Ally's Deposit Agreement.  In any event, this claim fails because, as

18  explained above, Ally did not violate either statute.  *See* Section V, *supra*.

19      Because Machinski's covenant claim is entirely duplicative of the breach of

20  contract claim it, too, necessarily fails.  *Canopy Corp. v. Symantec Corp.*, 395

21  F.Supp. 2d 1103, 1111 (D. Utah 2005) (dismissing duplicative covenant claims); *see

22  also Am. W. Bank Members, L.C.*, 2014 UT 49, ¶ 19 (holding that when a plaintiff

23  fails to allege "the existence of facts required to plead a breach of contract, it has

24  also failed to plead a breach of the covenant of good faith and fair dealing.").  For

25  these reasons, Machinski's contract claims should be dismissed.

26      **2.      The Negligence Claim Fails Under Utah Law**

27      The economic loss rule prevents contract claims, like the ones asserted in this

28  case, from dissolving into tort.  This judicially created doctrine prevents a "party

suffering only economic loss from the breach of an express or implied contractual duty" from asserting a tort claim "for such a breach *absent an independent duty of care* under tort law." *Hermansen v. Tasulis*, 2002 UT 52, ¶ 16, 48 P.3d 235, 240. *Grynberg v. Questar Pipeline Co.*, 2003 UT 8, ¶ 43, 70 P.3d 1, 11 ("[O]nce there is a contract, any tort claim must be premised upon an independent duty that exists apart from the contract. All contract duties, and all breaches of those duties—no matter how intentional—must be enforced pursuant to contract law."). Thus, to avoid the economic loss rule and prevail on a negligence claim, Machinski must establish four essential elements: (1) that Ally owed him a duty of care independent of the Deposit Agreement, (2) that Ally breached that duty, (3) that the breach of duty was the proximate cause of Machinski's injury, and (4) that Machinski in fact suffered injuries or damages. *UBS Bank USA v. Ibby, LLC*, No. 2:09-CV-372 TS, 2009 WL 4884383, at *5 (D. Utah Dec. 10, 2009) (citing *Macintosh v. Staker Paving and Const. Co.*, 2009 WL 953712, at *1 (Utah Ct.App. April 9, 2009).

Machinski's failure to identify an independent duty of care is fatal to his negligence claim. His claims are governed entirely by the Deposit Agreement.

Moreover, Utah courts have made clear that, in the absence of a statute, there is no general duty of care that allows a customer to sue its bank for negligence. *See Legal Tender Servs. PLLC v. Bank of Am. Fork*, 2022 UT App 26, ¶¶ 54-55, 506 P.3d 1211, 1223 (interpreting *Arrow Indus., Inc. v. Zions First Nat. Bank*, 767 P.2d 935 (Utah 1988). Machinski points to no statute that would support a duty of care that Ally owed to him to investigate fraud, or that Ally owed to him to disclose information about its (confidential) fraud investigations. To the contrary—federal statutes expressly prohibit the disclosure of such information, and any investigation or reporting obligations a bank has are owed to the government, not customers. *See, e.g.*, 31 U.S.C. §5318(g)(2)(A)(i); 12 C.F.R. §21.11(k)(1)(i); *see also* (*Lusk v. Kellogg* (C.D.Cal. Aug. 10, 2011) 2011 U.S.Dist.LEXIS 164153, at *14 ("The Bank Secrecy Act creates neither a private right action nor any parallel duty to a bank

customer").

Even if Machinski could establish a duty of care, the FAC concedes Ally breached no such duty. Ally did investigate fraud, and did provide information about its ongoing investigation, to the extent it could. Machinski fails to explain how Ally's conduct caused him to sustain any damages.

Because the parties' relationship is governed by contract, and Machinski cites no legal basis for imposing an independent duty of care, or any facts that would support a breach or damages caused by Ally, the negligence claim necessarily fails and should be dismissed.

### 3. The Fraud Claims Should be Dismissed as Fatally Defective Under Utah Law

Machinski's fifth cause of action is for negligent misrepresentation and concealment, and the sixth cause of action is for intentional misrepresentation. Both causes of action are species of fraud, and must be plead with particularity. Utah R.Civ.P. 9(b).

To plead fraud, a plaintiff must allege:

> (1) that a representation was made (2) concerning a presently existing material fact (3) which was false and (4) which the representor either (a) knew to be false or (b) made recklessly, knowing that there was insufficient knowledge upon which to base such a representation, (5) for the purpose of inducing the other party to act upon it and (6) that the other party, acting reasonably and in ignorance of its falsity, (7) did in fact rely upon it (8) and was thereby induced to act (9) to that party's injury and damage.

*Armed Forces Ins. Exch. v. Harrison*, 2003 UT 14, ¶ 16, 70 P.3d 35, 40. The elements of negligent misrepresentation are similar to those of fraud except that negligent misrepresentation does not require the intentional mental state necessary to establish fraud. *Shah v. Intermountain Healthcare, Inc.*, 2013 UT App 261, 314 P.3d 1079.

Fraudulent nondisclosure, on the other hand, requires a plaintiff to plead and

prove the following three elements: "(1) the nondisclosed information is material, (2) the nondisclosed information is known to the party failing to disclose, and (3) there is a legal duty to communicate. [Citation]." *Hermansen v. Tasulis*, 2002 UT 52, ¶ 24, 48 P.3d 235, 241-42; *McDougal v. Weed,* 945 P.2d 175, 179 (Utah Ct.App.1997) ("Fraudulent concealment requires that one with a legal duty or obligation to communicate certain facts remain silent or otherwise act to conceal material facts known to him"); *DeBry v. Valley Mortgage Co.,* 835 P.2d 1000, 1008 (Utah Ct.App.1992) (denying liability for an "implied" misrepresentation where the defendant mortgage company owed no duty to disclose information to purchasers of real property).

Machinski's attempt at pleading fraud—under any of the legal theories outlined above—falls short.

First and foremost, Machinski has not pleaded fraud with the specificity required by Rule 9.  *See* FRCP 9.  Indeed, Machinski's fifth and sixth causes of action fail to provide the "who, what, where, when, and how" of the alleged fraud. *Clinton v. Sec. Benefit Life Ins. Co.*, 63 F.4th 1264, 1277 (10th Cir. 2023).  Neither cause of action identifies, with any particularity, the exact misrepresentation or omission at issue, or the requisite details concerning the "who, what, where, when and how."  For this reason alone, dismissal is warranted.

Second, Machinski fails to identify any misrepresentation by Ally at all. *Gaddy v. Corp. of President of Church of Jesus Christ of Latter-Day Saints*, 451 F. Supp. 3d 1227, 1235 (D. Utah 2020) (""[A] statement's falsity is an essential element of fraud claims.").  As best Ally can tell, Machinski is alleging that Ally misrepresented the checks were under investigation, and misrepresented that it was conducting a fraud investigation.  FAC ¶¶ 83, 89.  But, the FAC is replete with allegations relating to Ally's fraud investigation, and Ally's efforts to validate the checks' deposit (with Santander Bank, for example).  *See* FAC ¶ 42.  Simply put, Machinski's own allegations betray his fraud claims.  In the absence of a

misrepresentation, the fraud claims necessarily fail.

Third, the fraud claims reference Ally's alleged failure to disclose information about why Machinski's OSA was frozen during the fraud investigation. FAC ¶¶ 83, 89. But, critically, Machinski has not identified any legal obligation by Ally to disclose information relating to its fraud investigation, such as the exact reasons that Ally was prompted to freeze Machinski's OSA. No such obligation exists.

Finally, Machinski has not alleged reliance on the alleged misrepresentations or omissions—quite the opposite. Machinski claims he was induced "not to take legal action" while Ally's fraud investigation was ongoing. FAC ¶¶ 83, 89. But, this case proves otherwise. According to Machinski's original Complaint, Machinski was told he would not have access to his OSA during the pendency of Ally's investigation—and "[a]s of the date of [the] complaint… Machinski still ha[d] no access to his account and no access to his funds." Dkt. 1 [Compl.] at ¶ 37. In other words, the Complaint proves that Machinski took the exact action he claims he was induced "not to take." So, once again, Machinski's own admissions belie his claim of reliance.

For each of these reasons, Machinski has not and cannot allege a fraud claim.

### 4.    Utah Law Precludes Machinski's § 17200 Claim

Because Utah law governs Machinski's dispute with Ally, Machinski cannot pursue a claim for violation of Cal. Bus. & Prof. Code § 17200. *Jamerson v. UMG Recordings, Inc.*, No. CV1302825MMMJCX, 2014 WL 12588642, at *15 (C.D. Cal. Apr. 14, 2014). The § 17200 claim "must be dismissed for this reason alone." *Id.*; *see also Cannon v. Wells Fargo Bank N.A.*, 917 F.Supp.2d 1025, 1051, 1055 (N.D. Cal. Jan. 9, 2013) (dismissing a § 17200 claim because Florida law, not California law, governed); *CollegeNet, Inc. v. Xap Corp.*, No. CV–03–1229–HU, 2004 WL 2303506, *14 (D. Or. Oct. 12, 2004) (dismissing § 17200 claim because Oregon law, not California law, applied).

### 5. California Law Would Yield no Different Result

As outlined above, the FAC fails to allege the essential elements of common law claims for breach of contract, fraud (intentional and negligent misrepresentation/fraudulent omission), and negligence.  These missing elements would render these claims equally fatal under California law, if it were applied to Machinski's claims.  *See, e.g.*, *Armstrong Petroleum Corp. v. Tri-valley Oil & Gas Co.*, 116 Cal.App.4th 1375, 1390 (2004) (setting forth elements of a contract claim); *Otworth v. Southern Pac. Transp. Co.*, 166 Cal.App.3d 452, 459 (1985) (requiring material contract terms to be pled verbatim); *Borman v. Brown*, 59 Cal.App.5th 1048, 1060–61 (2021) (fraud and negligent misrepresentation claims require, among other things, a misrepresentation and reliance); *Kaldenbach v. Mutual of Omaha Life Ins. Co.*, 178 Cal.App.4th 830, 850 (2009) (concealment claim requires duty to disclose a material fact); *Kurtz-Ahlers, LLC v. Bank of America, NA.*, 48 Cal.App.5th 952, 956 (2020) (noting the limited duties, not at issue here, that a bank owes its depositor).

Moreover, because Machinski's Bus. & Prof. Code § 17200 claim is premised on his fatally defective federal and common law claims, it similarly would not be viable under California law.  *Krantz v. BT Visual Images, LLC*, (2001) 89 Cal.App.4th 164, 178 (dismissing § 17200 claim and noting that a § 17200 claim is "incidental to and depend[s] upon the validity (or invalidity) of the preceding claims for relief. … [It] stand[s] or fall[s] depending on the fate of the antecedent substantive causes of action."); *Glenn K. Jackson Inc. v. Roe* (9th Cir. 2001) 273 F.3d 1192, 1203 (dismissing § 17200 claim where underlying negligence and fraud claims were insufficient as a matter of law); *see also Madrid v. Perot Systems Corp.*, 130 Cal.App.4th 440, 452 (2005) ("The UCL limits the remedies available for UCL violations to restitution and injunctive relief….").

Although the Court should apply Utah law, under any choice of law, Machinski has no viable claim.

# VII.

## CONCLUSION

For all of the reasons stated above, the Court should grant Ally's Motion to Dismiss, without leave to amend.

DATED: February 13, 2025

SEVERSON & WERSON
A Professional Corporation

By: _____
    */s/ Elizabeth C. Farrell*
    ELIZABETH C. FARRELL

Attorneys for Defendant ALLY BANK

Case No. 5:24-CV-07452

# PROOF OF SERVICE

### Machinski v. Ally Bank, et al.
### Case No. 5:24-CV-07452

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Orange, State of California. My business address is The Atrium, 19100 Von Karman Avenue, Suite 700, Irvine, CA 92612.

On February 13, 2025, I served true copies of the following document(s):

**NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

on the interested parties in this action as follows:

Robert Machinski                    PRO SE PLAINTIFF
1224 Bracebridge Court
Campbell, CA 95008                  (408) 679-4240
                                    Email: machinski@macht3.com

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on February 13, 2025, at Irvine, California.

Lorraine N. Johnson