IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ROBERT MACHINSKI,<br><br>Plaintiff,<br><br>v.<br><br>ALLY BANK, et al.,<br><br>Defendants. | REPORT AND RECOMMENDATION GRANTING [71] MOTION TO DISMISS AND DENYING [77] MOTION TO AMEND BUT GRANTING PLAINTIFF LEAVE TO FILE A SECOND AMENDED COMPLAINT CONSISTENT WITH THIS RULING<br><br>Case No. 2:25-cv-00292-AMA-CMR<br>Judge Ann Marie McIff Allen<br>Magistrate Judge Cecilia M. Romero |

This case is referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) (ECF 61). Before the court is Defendant Ally Bank's (Defendant or Ally Bank) Motion to Dismiss (Motion to Dismiss) (ECF 71) regarding Plaintiff Robert Machinski's (Plaintiff) First Amended Complaint (ECF 15), Plaintiff's Opposition (ECF 74), and Defendant's Reply (ECF 76). Also before the court is Plaintiff's Motion for Leave to File Second Amended Complaint (ECF 77) (Motion to Amend), Defendant's Opposition (ECF 79), and Plaintiff's Reply (ECF 81). Having carefully considered the relevant filings, the undersigned finds that oral argument is not necessary and decides this matter on the written memoranda. *See* DUCivR 7-1(g). For the reasons below, the undersigned RECOMMENDS that the court GRANT Defendant's Motion to Dismiss (ECF 71), DENY Plaintiff's Motion to Amend (ECF 72), but grant Plaintiff leave to file a Second Amended Complaint consistent with the ruling below.

I.      BACKGROUND

These facts are gathered from Plaintiff's Amended Complaint (ECF 15) (Am. Compl.). Plaintiff, a California resident (*id*. ¶ 17), has had a personal spending account (hereinafter, the

1

Account) with Ally Bank since May 15, 2018 (*id*. ¶ 28). On October 1, 2024, Plaintiff electronically deposited the two following checks into the Account: (1) check in the amount of $12,681.28 issued from Santander Bank, N.A. (Santander Bank), for proceeds from an estate settlement mailed directly to Plaintiff from a probate attorney; and (2) check in the amount of $3,000 issued by a personal account holder and drawn from Chase Bank (*id*. ¶¶ 31–33). Within two or three business days, the checks cleared, and for over a week, Plaintiff had access to the funds without incident (*id*. ¶ 35).

Unexpectedly, on October 10, 2024 (after having access to the funds for roughly 9 days), Plaintiff, while trying to make a purchase with his Ally Bank debit card, was notified that the purchase was declined (*id*. ¶ 36). After being unable to access the Account, Plaintiff contacted Ally Bank and was directed to its fraud department, where he was told that the Account had been locked for fraud and was under investigation (*id*. ¶ 37). Plaintiff was given no timeline for when the investigation would be completed or when the Account would be unlocked (*id*.). For two weeks, Plaintiff contacted Ally Bank's fraud department multiple times to get updates (*id*. ¶ 38). On October 17, 2024, Plaintiff spoke to Tim Doe, an agent of Ally Bank's fraud department, who told Plaintiff that an investigation was triggered because it was suspected that the two checks deposited on October 1, 2024, were fraudulent (*id*. ¶ 39). On October 21, 2024, Plaintiff spoke with Tim Doe again, and after a "heated back and forth," Tim Doe agreed to release the lock on the Account, and shortly after, Plaintiff was able to access the Account online (*id*. ¶ 40).

Later that same day (October 21, 2024), Plaintiff, under the assumption that the Account was unlocked, went with his daughter to purchase groceries using the Ally Bank debit card, but the transaction was declined (*id*. ¶ 41). The next day, Plaintiff spoke with Tim Doe again, who indicated that his supervisor, Mariah Doe, told him to place the lock back on Plaintiff's Account

until the investigation was completed (*id.* ¶ 42). Tim Doe told Plaintiff that Ally Bank had reached out to Santander Bank on October 20, 2024, to validate the deposit of the estate settlement check, in the amount of $12,681.28, and was awaiting a response (*id.*). Feeling like he had no other recourse, and still without access to his Account, Plaintiff brought this action against Ally Bank, Tim Doe, and Mariah Doe on October 25, 2024 (*id.*). A day after Plaintiff filed his lawsuit, on October 26, 2024, Ally Bank released the lock on Plaintiff's Account (*id.* ¶ 47). Plaintiff originally brought this action in California, but the case was transferred from the United States District Court for the Northern District of California on April 16, 2025 (ECF 58).

As a result of having his Account locked, Plaintiff alleges seven causes of action against Defendant: (1) violation of the Electronic Funds Transfer Act (EFTA) (15 U.S.C. § 1693); (2) violation of the Expedited Funds Availability Act (EFAA) (12 U.S.C. § 4001); (3) negligence; and (4) breach of contract and breach of the covenant of good faith and fair dealing; (5) negligent misrepresentation and concealment; (6) intentional misrepresentation; and (7) unfair competition (Cal. Bus. & Prof. Code § 17200) (*id.* ¶¶ 48–98). Defendant, by filing the present Motion, seeks dismissal of all causes of action for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) (ECF 71). Plaintiff has since filed a Motion to Amend (ECF 77), which Defendant also opposes, asserting that amendment would be futile (ECF 79).

## II.     LEGAL STANDARDS

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals

of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). In this review, a "court accepts as true well-pleaded factual allegations and views the allegations in the light most favorable to the plaintiff, drawing all reasonable inferences in the plaintiff's favor." *Hendershot v. Gurstel L. Firm, P.C.*, No. 2:20-cv-00118-DBB-DAO, 2020 WL 8083573, at *2 (D. Utah Dec. 17, 2020) (citing *Wilson v. Montano*, 715 F.3d 847, 852 (10th Cir. 2013)), *report and recommendation adopted*, 2021 WL 76163 (D. Utah Jan. 8, 2021).

Because Plaintiff is acting *pro se,* his filings are liberally construed and held "to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Still, a *pro se* plaintiff must "follow the same rules of procedure that govern other litigants." *Garrett v. Selby, Connor, Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (quoting *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994)). However, it is not the court's function to assume the role of advocate on behalf of pro se litigants. *See Hall*, 935 F.2d at 1110. The court "will [also] not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1175 (10th Cir. 1997).

### III.   DISCUSSION

#### A. Federal Claims

##### i. First Cause of Action: Violations of the Electronic Fund Transfer Act

Plaintiff's First Cause of Action alleges that Defendant violated EFTA, 15 U.S.C. § 1693 et seq., and its implementing regulation, 12 C.F.R. § 1005 or Regulation E (Regulation E) (Am. Comp. ¶¶ 48–55). EFTA is the federal statute that safeguards consumer rights regarding electronic fund transfers by imposing specific rules and procedures that financial institutions must follow

when a consumer engages in an electronic fund transfer. 15 U.S.C. § 1693(b). Regulation E is the Consumer Financial Protection Bureau's regulation that enforces and interprets EFTA. 12 C.F.R. § 1005.1(b) (stating that Regulation E "carries out the purposes of [EFTA]"). Consequently, EFTA and Regulation E are often cited interchangeably.

Plaintiff claims that the two check deposits in question qualify as electronic fund transfers, warranting EFTA protections (Am. Comp. ¶¶ 48–55). According to Plaintiff, because the checks were covered by EFTA, Defendant violated various EFTA provisions by failing to provide access to Plaintiff's account and failing to conduct a good faith investigation (*id.*). Defendant contends that the Amended Complaint fails to state a claim because EFTA "does not apply to checks," and even if it did apply to Plaintiff's check deposits, EFTA does not apply to "account freezes pending an investigation" (ECF 71 at 13–15). The undersigned agrees that EFTA does not apply based on the facts alleged.

As stated above, the purpose of EFTA and Regulation E is to protect consumers engaging in electronic fund transfers. 15 U.S.C. § 1693. EFTA provides specific procedures and rules that financial institutions must follow when a consumer engages in an electronic fund transfer, and failure to comply subjects the financial institution to civil liability. 15 U.S.C. § 1693m **(**"[A]ny person who fails to comply with any provision of this subchapter with respect to any consumer . . . is liable to such consumer. . ."). Thus, to determine whether a financial institution violated EFTA, the complaint must sufficiently allege that the plaintiff/consumer engaged in an electronic fund transfer as defined by EFTA. Electronic fund transfers are defined in 12 C.F.R. § 1005.3(b).[1] 12 C.F.R. § 1005.3(c) details which transactions are excluded from coverage, and specifically states that "[t]he term 'electronic fund transfer' does not include . . . [a]ny transfer of funds originated

---

[1] *See also* 15 U.S.C. § 1693a(7).

by check, draft, or similar paper instrument; or any payment made by check, draft, or similar paper instrument at an electronic terminal." 12 C.F.R. § 1005.3(c)(1).[2] Here, the only electronic fund transfers alleged in the Amended Complaint are two transfers originated by check (Am. Compl. ¶¶ 31–33); as such, EFTA does not apply.

Despite EFTA's clear language, the Amended Complaint alleges that the two check deposits were electronic fund transfers because they were "conveyed as an image through a computer terminal" (*id*. ¶ 31). While the definition of an electronic fund transfer "means any transfer of funds that is initiated through an electronic terminal," 12 C.F.R. § 1005(b)(1), as stated above, EFTA does not cover "any transfer of funds originated by check . . . at an electronic terminal." 12 C.F.R. § 1005.3(c)(1). Thus, the two checks in question are excluded from EFTA protections, even if initiated through an electronic terminal.

Moreover, Defendant argues that even if ETFA applied, it does not apply to account freezes nor has Plaintiff identified a qualifying error (ECF 74 at 14 (citing *Hardin v. Bank of America, N.A.*, No. 2:22-CV-10023, 2022 WL 3568568, at *3 (E.D. Mich. Aug. 18, 2022) (noting that "EFTA does not regulate account freezes…" such as when access to an account is restricted "pending an investigation"); *Fuller v. BMO Bank*, No. CV 24-1800-CBM-KSX, 2024 WL 4403875, at *3 (C.D. Cal. Aug. 16, 2024) ("'errors' for purposes of 12 C.F.R. § 205.11 and the EFTA do not include the [] account freezes….")). Although the above cases cited by Defendant are non-binding, the undersigned finds them persuasive.

Plaintiff, in his Opposition (ECF 74), contends that EFTA and Regulation E mandate that financial institutions conduct a reasonable and prompt investigation in good faith when a consumer reports an error (ECF 74 at 9). Specifically, Plaintiff cites to Regulation E, Section 1005.11

---

[2] *See also* 12 C.F.R. § 1005.3(b)(1) (indicating that an electronic fund transfer "means any transfer of funds, *other than a transaction originated by check*, draft, or similar paper instrument . . .") (emphasis added).

"Procedures for resolving errors," claiming that Defendant failed to comply with Regulation E's procedures (*id.*). Here, while the Amended Complaint sufficiently pleads that Plaintiff contacted Defendant on multiple occasions and conveyed to Defendant that he believed the account freeze was an error, this is not a qualifying error under Regulation E. Regulation E procedures are triggered by notice of an alleged Regulation E error, not merely by any account dispute.

Regulation E's procedures for resolving errors apply when a qualifying "error" is identified by the financial institution or the consumer. *See* 12 C.F.R. § 1005.11. Regulation E provides a closed list of what constitutes an "error." 12 C.F.R. § 1005.11(a)(1)(i)–(vii).[3] A consumer is statutorily permitted to provide oral or written notice of error, and the consumer is only required to indicate "a belief that an error occurred." 12 C.F.R. § 1005.11(b)(1)(iii). If a consumer provides adequate oral notice, the financial institution must comply with Regulation E's procedures for resolving errors. 12 C.F.R. § 1005.11(b)(1) ("A financial institution shall comply with the requirements of this section with respect to any oral or written notice of error from the consumer. . ."). At first glance, it appears that Plaintiff has alleged he provided adequate oral notice by calling Defendant on multiple occasions to indicate that the account freeze was in error. Plaintiff's notice, however, is insufficient to invoke Regulation E's procedures because oral notice must still relate to a transaction that, if proven, would constitute an "error" as defined in § 1005.11(a). Otherwise, any account complaint could invoke Regulation E's error procedures, effectively nullifying Regulation E's enumerated list of covered errors.

Here, Plaintiff contacted Defendant regarding an error arising from an investigation into two previously deposited checks. Under these facts, Plaintiff has not sufficiently alleged that he provided adequate oral notice of error to invoke Regulation E's error procedures. Any other finding

---

[3] *See also* 15 U.S.C. § 1693f(f)(1)–(7).

would impermissibly expand Regulation E's error procedures to "transfer of funds originated by check," which are expressly excluded from Regulation E's framework. Accordingly, the Amended Complaint fails to allege sufficient facts indicating that Defendant was required to comply with Regulation E's procedures.

In summary, even if the facts in the Amended Complaint are true, Plaintiff fails to state an EFTA violation claim because: (1) his two check-based transactions are not classified as electronic fund transfers covered by EFTA; and (2) even if EFTA applied, Defendant was not obligated to follow EFTA's error resolution procedures because Plaintiff has not pleaded an "error" that invokes those procedures. Accordingly, the undersigned recommends that Plaintiff's First Cause of Action be dismissed without prejudice for failure to state a claim.

    ii.    <u>Second Cause of Action: Violations of the Expedited Funds Availability Act</u>

Plaintiff's Second Cause of Action asserts violations of EFAA, 12 U.S.C. § 4001, and its implementing regulation, 12 C.F.R. Part 229 (Regulation CC) (Am. Compl. ¶ 59). EFAA and Regulation CC are cited interchangeably for the same reasons EFTA and Regulation E are. *See supra* part III(A)(i). EFAA is the federal statute that governs when deposits, including deposits originating from checks, must be made available for withdrawal (*see* 12 U.S.C. § 4002), and Regulation CC is the Board of Governors of the Federal Reserve System's regulation that enforces and interprets EFAA. 12 C.F.R. Part 229.1(a)(1) (stating that the purpose of Regulation CC is to implement the Expedited Funds Availability Act).

Plaintiff specifically asserts that, under Regulation CC, for deposits over $5,525, banks may not take more than 7 business days to clear the deposit regardless of form (*id*. ¶ 62). If such a hold is placed, the bank shall notify the account holder of the reason for the hold and state when the funds will be made available (*id*.). Plaintiff claims that Defendant violated Regulation CC by

8

taking "26 days to clear two routine and ordinary deposits" (*id*. ¶ 63). Defendant argues that Plaintiff has failed to state a claim for a Regulation CC violation because this case does not involve a deposit hold (ECF 71 at 15–16). Defendant points out that the Amended Complaint specifically alleges that the two checks "cleared" and that Plaintiff had access to those funds "[f]or over a week . . . without inciden[t]." (ECF 71 at 16 (quoting Am. Compl. ¶¶ 31, 35)). It wasn't until ten days after the checks were deposited into Plaintiff's Account that Defendant initiated a fraud investigation, resulting in Plaintiff losing access to the funds and his Account (*Id*. (citing Am. Compl. ¶¶ 37–39, 47)). Defendant asserts that because the checks were cleared within the requisite time frame under Regulation CC, the subsequent account freeze was not a violation of Regulation CC (*id*.).

To support the position, Defendant cites to the *Little Donkey*, a case where the Ninth Circuit held that "[m]erely placing a hold on or freezing funds in an account after [a] deposit [has] been made available is not a violation of the [EFAA] and thus does not support a claim for civil liability under 12 U.S.C. § 4010." *Little Donkey Enterprises Washington, Inc. v. U.S. Bancorp*, 136 F. App'x 91, 92 (9th Cir. 2005). Defendant also cites three other cases that stand for the same proposition: *Nix v. NASA Fed. Credit Union*, 200 F. Supp. 3d 578, 587 (D. Md. 2016) ("Multiple courts . . . have held that merely placing a hold on or freezing funds in an account after deposits have been made available is not a violation of the EFAA and does not support a claim for civil liability."); *Gaskin v. BMO Harris Bank NA*, No. CV-23-01919-PHX-SMB, 2024 WL 1961843, at *3 (D. Ariz. May 3, 2024) ("However' the EFAA does not prohibit account freezes resulting from suspicious activity, and a bank is not liable under the EFAA for freezing an account."); *DriverDo LLC v. JP Morgan Chase Bank, N.A.*, No. 20 C 5046, 2022 WL 3645909, at *6 (N.D.

Ill. Aug. 24, 2022) ("[Plaintiff] was unable to withdraw or transfer any funds whatsoever due to a freeze on the account. [Reg CC] is therefore inapplicable.") (*id*.).

Plaintiff, in his Opposition, correctly highlights that the cases cited by Defendant are non-binding, *Little Donkey* is an unpublished opinion, and that the other three cases cited by Defendant all "point back" to *Little Donkey* (ECF 74 at 10). Plaintiff further attempts to distinguish *Little Donkey* by asserting that the plaintiff in *Little Donkey* "failed to SPECIFICALLY identify check deposits which were held beyond the EFAA requirement. On the contrary, Plaintiff Machinski in this underlying matter has specifically identified two checks that were placed on excessive holds by Ally Bank" (*id*.). While Plaintiff is correct that the cases provided by Defendant are non-binding, the undersigned finds them persuasive and informative, and Plaintiff's attempt to distinguish *Little Donkey* falls short.

As stated above, EFAA and Regulation CC govern when funds from deposited checks must be made available for withdrawal. *See* 12 C.F.R. § 229.1. Regulation CC requires that funds deposited in an account by check be made available for withdrawal within a specified schedule/timeframe. 12 C.F.R. § 229.12. Plaintiff, in his Statement of Facts, pleads that the funds from the two checks were cleared and made available "[w]ithin two or three business days" and that he had access to the funds "[f]or over a week . . . without inciden[t]." (Am. Compl. ¶¶ 31, 35). Plaintiff appears to have no issue with the time it initially took for the funds to be deposited and made available for withdrawal, especially since the Amended Complaint asserts that "under Regulation CC, for deposits over $5,525, banks may not take more than 7 business days to clear the deposit regardless of form" (*id*. ¶ 62). Given the facts as alleged in the Amended Complaint, Plaintiff indicates that the funds were timely deposited and "business was per usual" (Am. Compl. ¶ 35). Plaintiff's main contention is that his account was frozen roughly 10 days after the funds

10

were made available, and because of this, Plaintiff asserts that the funds took "26 days to clear," violating Regulation CC's allowed schedule (Am. Compl. ¶ 63). Plaintiff, however, incorrectly alleges that a subsequent account freeze converts a completed deposit into a violation of Regulation CC's allowed schedule.

As multiple courts have held, and consistent with the undersigned's interpretation of Regulation CC, a later account freeze, occurring after a deposit, does not qualify as a "deposit hold" and cannot retroactively convert a completed deposit into a violation of Regulation CC. *See DriverDo LLC v. JP Morgan Chase Bank, N.A.*, No. 20 C 5046, 2021 WL 3487331, at *4 (N.D. Ill. Aug. 9, 2021) ("Numerous courts have held, however, that placing a hold on or freezing an account after deposits have been made does not violate the EFAA." (citing *Frost Nat'l Bank v. Parker*, No. 95-2150, 1999 WL 33438078, at *14 (C.D. Ill. Feb. 26, 1999))).[4] Therefore, Plaintiff's attempt to reframe a later account freeze as an extended deposit hold is legally incorrect and would unfairly broaden Regulation CC beyond its intended scope. Accordingly, the undersigned recommends that Plaintiff's Second Cause of Action be dismissed without prejudice for failure to state a claim.

### B. State Law Claims: Causes of Action Three through Seven

Plaintiff's remaining causes of action assert claims arising under state law: Negligence (Third Cause of Action), Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing (Fourth Cause of Action), and Violation of Various California Statutes (Fifth, Sixth, and Seventh Causes of Action) (Am. Compl. ¶¶ 66–98). Before addressing Plaintiff's state law claims

---

[4] *See, e.g.*, *Houston v. JP Morgan Chase & Co.*, No. 23 CV 2792, 2026 WL 26129, at *11 (N.D. Ill. Jan. 5, 2026); *Gaskin v. BMO Harris Bank N.A.*, No. 2:23 cv 01919, 2024 WL 1882606 (D. Ariz. May 3, 2024); *Vanco v. JPMorgan Chase Bank, N.A.*, No. ELH 16 3682, 2017 WL 1505968 (D. Md. Apr. 14, 2017); *Nix v. NASA Fed. Credit Union*, 200 F. Supp. 3d 578, 587 (D. Md. 2016); *Anderson v. USAA Federal Savings Bank*, No. 8:13 cv 1316, 2013 WL 4776728, at 2 (D.S.C. Sept. 4, 2013).

(Causes of Action 3–7), the undersigned determines whether subject-matter jurisdiction exists. *See Mocek v. City of Albuquerque*, 813 F.3d 912, 934 (10th Cir. 2015) (finding that courts have an "independent obligation to determine whether subject matter exists" that extends to "any stage in the litigation" (quoting *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006))).

Because Plaintiff has failed to plead violations of the above-referenced federal statutes, the court lacks federal-question jurisdiction over this case, but diversity jurisdiction under 28 U.S.C. § 1332(a)(1) exists here. Subject matter jurisdiction under 28 U.S.C. § 1332(a) requires, in addition to diversity of citizenship, an amount in controversy in excess of "$75,000, exclusive of interest and costs." *McPhail v. Deere & Co.*, 529 F.3d 947, 952 (10th Cir. 2008) (quoting 28 U.S.C. § 1332(a)(1)). Plaintiff is a resident of California, and Defendant is a resident of Utah, so diversity is satisfied. The amount in controversy is also satisfied because in Plaintiff's original civil cover sheet, he alleges that the amount in controversy is $75,001 (ECF 1-1). Accordingly, the undersigned determines that subject matter jurisdiction under 28 U.S.C. § 1332(a) is satisfied and proceeds to consider Plaintiff's remaining causes of action.

Plaintiff initially filed the action under the belief that California law applied to his state law claims (*id*. at 6 ("Furthermore, Machinski brings this diversity civil case against Ally Bank because of their Breach of Contract, Breach of the Implied Covenant of Good Faith and Fair Dealing, Negligence, Intentional and Negligent Misrepresentation Concealment, Unfair Competition, all in violation of California state laws.")). Accordingly, all the state law claims asserted in the Amended Complaint are alleged to violate various California statutes; however, as Defendant points out, under the choice-of-law provision in the Deposit Agreement, Utah law governs those claims (ECF 71 at 17). As such, Defendant asserts that Plaintiff has failed to plead viable state law claims

because they are governed by Utah law (*id.*). Defendant then argues that the state law claims would fail even if brought under Utah law (*id.* at 17–26).

In response, Plaintiff concedes that because the "'implied' forum selection clause required this case be transferred and litigated in Utah, the California claims may or may not be moot," and he requests that, instead of dismissing the claims with prejudice, he be granted leave to file an amended complaint that includes corresponding Utah law (ECF 74 at 11).[5] Plaintiff has since filed a Motion to Amend (ECF 77), which includes as an attachment Plaintiff's Proposed Second Amended Complaint (ECF 77-2) (Proposed Second Amended Complaint). Plaintiff claims that the Motion to Amend was brought "to address potential deficiencies raised" by Defendant's Motion to Dismiss, including amending the claims to assert viable legal theories under Utah Law (ECF 77 at 2). Defendant opposes the Motion to Amend, claiming undue delay, undue prejudice, and futility (ECF 79 at 6–10).

The undersigned agrees that Utah law governs Plaintiff's state law claims, but dismissing the state law claims with prejudice would be unduly harsh given that they were brought under the assumption that California law governed. And while the undersigned acknowledges that Plaintiff has filed a Second Amended Complaint aimed at addressing various deficiencies in the Amended Complaint, dismissing the Proposed Second Amended Complaint with prejudice would also be

---

[5] In his Opposition, Plaintiff also claims that Defendant's Motion should be converted to a motion for summary judgment because the Motion relies on matters outside of the pleadings, namely, Exhibit 1 of the Motion, the alleged Deposit Agreement dated January 7, 2017 (ECF 7 at 6–7). The Amended Complaint specifically refers to a contract which includes the terms and conditions of Plaintiff's account (Am. Compl. ¶ 72). "[I]f a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." *Burke v. Holdman*, 750 Fed. Appx. 616, 620 (10th Cir. 2018) (quoting *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997)). "If the rule were otherwise, a plaintiff with a deficient claim could survive a motion to dismiss simply by not attaching a dispositive document upon which the plaintiff relied." *Id.* Because the Amended Complaint references a Deposit Agreement and alleges violations of said agreement, the Deposit Agreement is central to Plaintiff's claims. Accordingly, this court may consider it when reviewing Defendant's motion to dismiss without converting the Motion to a motion for summary judgment.

unduly harsh, given that Plaintiff filed the Motion to Amend without having the benefit of this ruling.[6] Accordingly, the undersigned recommends that Plaintiff's state law claims (Cause of Action 3–7) be dismissed without prejudice, and that he be granted leave to file a Second Amended Complaint addressing these deficiencies. Such a ruling is consistent with this court's more lenient standard applied to pro se parties and provides Plaintiff with time to evaluate if he still has viable federal and state law claims in light of this recommendation.

In summary, the undersigned recommends that Defendant's Motion to Dismiss be GRANTED and that Plaintiff's seven causes of action be dismissed without prejudice. The undersigned also recommends that Plaintiff be granted leave to file a Second Amended Complaint, which addresses the issues identified in this recommendation.

### C. Plaintiff's Motion to Amend

As discussed above, Plaintiff has filed a Motion to Amend (ECF 77), which includes Plaintiff's Proposed Second Amended Complaint (ECF 77-2). Defendant opposes Plaintiff's Motion to Amend, asserting that the Proposed Second Amended Complaint does not address, much less correct, the deficiencies that Ally Bank raised in its motion to dismiss the First Amended Complaint (ECF 79 at 6–10). While the undersigned agrees that the Proposed Second Amended Complaint does not address many deficiencies raised by Defendant in its Motion to Dismiss, Plaintiff did not have the benefit of this ruling, and under Rule 15, the court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. (a)(2). Here, the undersigned finds that justice requires that Plaintiff be granted leave to file a Second Amended Complaint with sufficient time to determine whether he has any viable claims, considering the issues and deficiencies addressed by the undersigned in this recommendation.

---

[6] The undersigned's reasoning for this recommendation is discussed further in Section C of this ruling, addressing Plaintiff's pending Motion to Amend.

Therefore, the undersigned recommends that the court DENY Plaintiff's Motion to Amend, but grant Plaintiff leave to file a Second Amended Complaint. The undersigned understands that such a ruling will place the burden on Defendant to file a renewed motion to dismiss or otherwise respond to the new operative complaint, but given Plaintiff's pro se status, justice is better served by granting Plaintiff a final opportunity to sufficiently plead his case rather than dismissing his claims with prejudice.

## RECOMMENDATION

Based upon the foregoing, IT IS HEREBY RECOMMENDED that Defendant's Motion to Dismiss (ECF 71) be GRANTED, Plaintiff's Motion to Amend (ECF 77) be DENIED, but Plaintiff be granted twenty-eight days (28) from the date of the court's ruling on this Report and Recommendation to file a Second Amended Complaint.

## NOTICE

Copies of this Report and Recommendation are being sent to all parties, who are hereby notified of their right to object. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The parties must file any objection to this Report and Recommendation within 14 days after being served with a copy of it. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to object may constitute a waiver of objections upon subsequent review.

DATED this 2 February 2026.

*Cecilia M. Romero*
Magistrate Judge Cecilia M. Romero
United States District Court for the District of Utah